# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4250 | **DATE** | 12/17/2003 |
| **CASE TITLE** | Guarantee Trust Life Insurance Co. vs. American United Life Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: American United Life Insurance Company's Motion to Compel Arbitration is granted. Guarantee Trust Life Insurance Company's Motion to Strike portions of defendant's affidavits is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | DEC 18 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | 2D |
| | Copy to judge/magistrate judge. | CLERK | | | |
| WAP | courtroom deputy's initials | 03 DEC 17 AM 4:55 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GUARANTEE TRUST LIFE INSURANCE
COMPANY,

        Plaintiff,

    v.

AMERICAN UNITED LIFE INSURANCE
COMPANY,

        Defendant.

FILED DEC 17 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

Case NO. 03 C 4250

Hon. Harry D. Leinenweber



DEC 18 2003

MEMORANDUM OPINION AND ORDER

Plaintiff Guarantee Trust Life Insurance (hereinafter, "GTL") brings suit against Defendant American United Life Insurance Company (hereinafter, "AUL") alleging breach of a reinsurance contract based on two inconsistent theories. Counts I and II allege that AUL breached an oral contract, while Counts III and IV plead in the alternative that AUL breached a written "Slip" agreement. AUL now brings this motion to compel arbitration. GTL contests AUL's petition, and brings its own motion to strike portions of AUL's submitted affidavits.

I. BACKGROUND

GTL is an insurer that manages a "College Book" consisting of student accident and sickness insurance. Beginning in 1999-2000, GTL and AUL signed a "quota share" agreement for AUL to reinsure 22% of this business. The companies did not negotiate directly with one another. Rather, each designated intermediaries to

function on their behalf – Reinsurance Services of Princeton (hereinafter, "RSP") represented AUL, while First Underwriters (hereinafter, "FU") served as a Managing General Underwriter for the transactions representing GTL. GTL contests that FU served as its agent, but provided no evidence or explanation as to what service FU performed. To implement this coverage, AUL and GTL executed a prototype treaty. In 1999-2000, GTL and AUL also executed another agreement (an "Excess Agreement") whereby AUL supplied GTL with excess of loss coverage.

The next year (2000-2001), AUL agreed to take a 39.5% quota share of the reinsurance on GTL's College Book. Prior to finalizing another prototype treaty, FU's agent, Arthur J. Gallagher (U.K.) Ltd. (hereinafter, "Gallagher") prepared a short outline of the negotiated terms known as a slip (hereinafter, the "Slip"). Gallagher sent the Slip to AUL, and AUL signed and executed it. This Slip included a two-word phrase, "arbitration clause," which AUL feels mandates arbitration. AUL and GTL did negotiate a formal prototype treaty for 2000-2001, but neither side fully executed it. In the absence of that treaty, AUL feels that the Slip controls the contract, mandating that this dispute be settled in arbitration.

GTL contests the Slip's validity (as it claims that FU and therefore Gallagher did not function as its agents), and also insists that the Slip's language is too broad and vague to compel

arbitration. Instead, GTL contends that an oral agreement governed its 2000-2001 contract with AUL. GTL also claims that this oral contract with AUL included a 2000-2001 Excess Agreement. AUL denies that any oral contract exists, and claims that it never agreed to any 2000-2001 Excess Agreement.

## II. **INCONSISTENT PLEADINGS**

Under Federal Rule of Civil Procedure 8(e)(2), parties can plead alternative theories of recovery and damages, inconsistent with one another. However, Rule 11 regulates this liberal pleading policy to prevent a party from pleading facts it knows to be false. Accordingly, a "pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996).

Here, GTL inconsistently pleads under two theories that AUL breached a contract with it concerning the 2000-2001 quota-share agreement. In Counts I and II, GTL alleges that AUL breached an oral contract, while in Counts III and IV GTL alternatively pleads that AUL breached the written Slip. AUL objects to GTL's alternative pleading on the grounds that GTL has "personal knowledge" whether it contracted via the Slip or oral contract. Therefore, AUL claims that Rule 11 prohibits GTL from alternatively pleading to facts it knows are false.

AUL's argument lacks merit. As noted above, the Federal Rules permit alternative pleading when the pleader is "legitimately in doubt" about the facts in question. Here, according to Count III, the disputed issue concerns whether the Court will find the Slip a valid and enforceable contract. At the stage of pleadings, this certainly was something that is "legitimately in doubt." GTL neither signed the slip, nor acknowledged its validity. Consequently, the Court finds that GTL has every right to plead in the alternative.

### III. **MOTION TO COMPEL ARBITRATION**

#### A. **Validity of the Slip**

Under the Federal Arbitration Act, Federal Courts lack jurisdiction when parties agree to resolve disputes via arbitration. Since, the party asserting jurisdiction bears the burden of establishing it, plaintiffs seeking to avoid arbitration must demonstrate a genuine issue of material fact as to whether a valid arbitration agreement exists. *Selcke v. New England Ins. Co.*, 2 F.3d 790, 792 (7th Cir. 1993); *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). To do so, the party must meet an evidentiary standard "analogized" to that required of parties seeking to avoid summary judgment. *Id.* Accordingly, such a party cannot merely rest upon the allegations contained in its pleadings.

Here, GTL seeks to avoid arbitration based on two grounds. First, GTL argues that it never agreed to the Slip containing the

arbitration clause, and therefore cannot be bound by it. Second, GTL contends that even if the Court concludes that the Slip created a valid contract, its two-word arbitration clause is too vague to enforce.

GTL has not presented sufficient evidence for its first argument to withstand the *Tinder* summary judgment standard. GTL claims that Gallagher did not function as its designated agent, and therefore lacked the authority to bind it to the Slip. However, GTL has submitted nothing other than the unsworn statements of its own counsel to support its position. Conversely, AUL has presented an affidavit from Wendell O. Ingraham containing his expert opinion that, based on his 30 years of experience in the reinsurance industry, the Slip is "fully-executed," thereby binding both parties. AUL also submitted the affidavit of its agent Robert Feil, who contends that FU and Gallagher did indeed function as GTL's agents during the Slip negotiation, and that GTL agreed to the Slip.

Since GTL has presented nothing supporting its position that Gallagher did not function as its designated agent, and has filed no response to Ingraham's and Feil's affidavits on this point (other than seeking to have them stricken, *see below*), the Court finds that it has not adequately established a doubt as to any material fact regarding whether the Slip was validly entered into

by the parties. As such, the Court rejects GTL's first argument attacking the arbitration clause.

## B. Validity of the Slip's Arbitration Clause

GTL also contends that even assuming that the Slip constitutes a valid contract, it's evidenced arbitration clause (literally "arbitration clause") is too vague for the Court to enforce. Like its earlier argument, the Court finds that this claim also lacks merit. In interpreting an arbitration agreement, courts should apply the principles of the state contract law that governed the agreement's formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As such, this Court finds itself in the unusual position of having to rule as a Pennsylvania state court.

After conducting extensive research, the Court could not find any Pennsylvania case law addressing this specific issue. However, the Court did detect a strong tendency among Pennsylvania courts (including federal courts functioning as Pennsylvania state courts) to favor arbitration whenever contracted. Thus, in Pennsylvania, motions to compel arbitration under "An agreement to arbitrate a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (internal citations omitted). In interpreting an arbitration

agreement, "any doubts . . . should be resolved in favor of arbitration." *Id.*

Therefore, in the Court's opinion, a Pennsylvania court would almost certainly uphold even a vague two-word clause as binding upon the parties. This is especially true in light of the fact that any time a court has recently addressed this issue it has found such clauses binding. *Zurich Am. Ins. Co. v. Cebcor Service Corp.* 2003 WL 21418237 at 2 (N.D. Ill. 2003); *CNA Reins. Co. Ltd. v. Trustmark Ins. Co.*, 2001 WL 648948 at 6 n.4. (N.D. Ill. 2001); *Allianz Life Ins. Co. of N. Am. v. Am. Phoenix Life & Reassurance Co.* 2000 U.S. Dist. LEXIS 7216 at 12 (D. Minn. 2000). In upholding a similar clause four months ago, Judge Gottschall concluded, "all three [previous] decisions agree that including the words 'arbitration clause' in a placement slip or cover note, despite their brevity and failure to specify terms, constitutes an enforceable agreement to arbitrate." *Zurich Am. Ins. Co.* at 2.

Accordingly, AUL's Motion to Compel Arbitration is granted.

### IV. **MOTION TO STRIKE PORTIONS OF AUL'S SUBMITTED AFFIDAVITS**

GTL also presents a motion before the Court, seeking to strike portions of affidavits submitted on AUL's behalf by Robert Feil and Wendell Ingraham. For the following reasons, this motion is denied.

### A. Robert Feil's Affidavit

From Mr. Feil's affidavit, GTL wishes to eviscerate the following five statements:

1) "First Underwriters, Inc., First Risk Advisors, First Student Programs as well as Arthur J. Gallagher (UK) Ltd. have all acted on GTL's behalf in connection with GTL's college book business."

2) "The Slip expressly provides for arbitration of disputes regarding the 2000 Quota Share Contract."

3) "After the slip was agreed to, disputes arose between AUL and GTL."

4) "RSP uses a standard arbitration clause in its reinsurance agreements which states, in part: [I]n the event of any dispute or difference of opinion hereafter arising with respect to this Treaty, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration."

5) "AUL did not enter into any such agreements for Excess Reinsurance with GTL."

GTL contests statements One and Three on the grounds that Mr. Feil lacked personal knowledge of GTL's relationship with Gallagher, and therefore cannot opine on whether Gallagher functioned as GTL's agent or whether GTL agreed to the Slip. While it is true that individuals cannot proffer statements in affidavits not based on personal knowledge, here Mr. Feil served as the primary negotiator of the Slip on AUL's behalf. In that capacity, Mr. Feil obviously had intimate knowledge of the representations made to him by the various parties. Currently, Mr. Feil's

- 8 -

affidavit does not specify *how* he acquired his alleged personal knowledge of GTL's acquiescence to both Gallagher and the Slip. It is certainly possible that Mr. Feil's affidavit consisted merely of his own speculation. However, it is equally possible that Mr. Feil personally learned of GTL's alleged consent through statements made to him by GTL officers. Without proof either way, the Court certainly feels free to take these statements for what they are: the nonspecific, self-interested, but entirely uncontroverted sworn testimony of an individual with significant personal knowledge concerning the formation and nature of the Slip.

GTL's also attacks statements Two, Four, and Five as improperly representing legal conclusions. Specifically, GTL wishes to strike Statement Two because it claims that Mr. Feil improperly draws the legal conclusion that the Slip's words "arbitration clause" amount to "the Slip expressly [providing] for arbitration of disputes." In the same vein, GTL challenges Statement Four for offering the unqualified and incorrect conclusion that RSF's arbitration clause is "standard." Lastly, GTL makes the borderline frivolous argument that Mr. Feil also offers a legal conclusion by stating that "AUL did not enter any such agreements for Excess Reinsurance with GTL."

In each of these instances, Mr. Feil recounts only facts and personal recollections. As chief negotiator, he certainly has the right to explain his understanding of what "arbitration clause"

means, and no one disputes that the Slip did "expressly" include these words. Likewise, as an RSF negotiator, Mr. Feil can certainly recount that his own company uses "a standard arbitration clause" (and not, as GTL mistakenly infers, from Mr. Feil's affidavit, the *only* standard). Finally, Mr. Feil, as a representative of AUL, can unquestionably testify that AUL did not enter into any excess reinsurance agreements with GTL. Such *factual* testimony lies at the heart of our adversarial system. Indeed, the testimony of individuals as to their recollections of what happened is precisely what the evidentiary system seeks to bring out. GTL's Motions to Strike Portions from Robert Feil's affidavit are denied.

### B. Wendell Ingraham's Affidavit

GTL also asks the Court to strike two portions from the affidavit of AUL's expert witness Wendell Ingraham:

1) "Based on my experience in the industry, [the Slip] is a fully-executed reinsurance slip for AUL to provide GTL with certain Quota Share reinsurance coverage, effective March 1, 2000 (the "Slip"). . . . The slip is a binding agreement until such time as a fully-worded treaty is executed by the parties."

2) "In conclusion, there is no doubt that AUL and GTL agreed to a Slip, the Slip is a binding contract for reinsurance, and the Slip memorializes the parties agreement to settle all disputes related to the Slip in arbitration."

GTL contends that both of the above statements constitute "legal conclusions." Again, GTL's argument lacks merit. Mr.

Wendell clearly states that his opinion is based not in law but "on my experience in the industry." Mr. Wendell's statements therefore amount to exactly what AUL says: an expert opinion of the Slip, based on the customs prevalent in the reinsurance industry. Therefore, GTL's Motion to Strike Portions of Wendell Ingraham's Affidavit is also denied.

## CONCLUSION

For the reasons stated herein, AUL's Motion to Compel Arbitration is granted. GTL's Motion to Strike Portions of AUL's Affidavits is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: December 17, 2003